The State *v.* The Indiana and Illinois Southern Railroad Co.

### No. 15,226.

## THE STATE *v.* THE INDIANA & ILLINOIS SOUTHERN RAILROAD COMPANY.

RAILROAD. —*Statute Construed.*—*Act of March 9th, 1889, Acts of 1889, p. 279.*—*Notice of Arrival of Trains, etc.*—In an action against a railroad company, based upon the act of March 9th, 1889, requiring corporations, companies, or persons operating a railroad in this State, to write upon a blackboard in each passenger depot, at which station there is a telegraph office, at least twenty minutes before the schedule time for the arrival of each passenger train stopping at such station, the fact whether such train is on time, and if late how much, and providing a penalty or forfeiture for the violation of said act, etc., a demurrer questioning the validity of the statute was sustained.

*Held*, that the act is constitutional, and that the demurrer to the complaint should have been overruled.

SAME.—*Statute Construed.*—*The word " Station" as Used in the Statute.*—*Meaning of.*—The word station, as used in the statute, is synonymous with the word passenger depot, meaning the place, the grounds and the buildings prepared for and used by the traveling public at such points in waiting for, taking and leaving the trains; and by the company in operating the road at that point.

SAME.—*Statute Construed.*—*Imposed Duty.*—*What Follows by Necessary Implication.*—Where the Legislature imposes the duty of doing a certain thing it carries with it the doing of such things as are necessary to perform the duty commanded, and the imposed duty of noting upon blackboards whether or not a train is on time, or if late how much, carries with it, by necessary implication, the furnishing of the blackboard and the necessary material to write with.

SAME.—*Statute Construed.*—*Judicial Notice of how Railroads are Operated.*—*Class Legislation.*—The court takes judicial knowledge that telegraph lines are maintained, operated and used in connection with railroads, and that it is necessary to do so to properly operate them and give advice as to the time of running trains, and in transacting the business of the road; and the fact that some company may operate a line of road by telephone, or some other means of communication, does not invalidate the law which is confined to those operated by telegraph, upon account of class legislation, for the law applies to all alike who operate roads by means of telegraphic information.

SAME. —*Statute Construed.*—*Forfeiture.*—*What Acts Constitute.*—*Frequency of Forfeitures.*—Whether there is a failure to make an entry on the board concerning the train, as required by the act, or whether there be an entry concerning such train, which is false, there could be but one forfeiture as to such train at such station during the same trip.

The State *v.* The Indiana and Illinois Southern Railroad Co.

SAME.—*Statute Construed.*—*Interstate Commerce.*—*Interference with.*—*Police Regulations.*—*Competency of.*—While the statute, requiring notice under certain condition of the arrival of passenger trains, deals with persons and corporations engaged in interstate commerce, yet the statute is a proper police regulation, which does not interfere with interstate commerce, and is in the power of the Legislature to enact.

SAME.—*Statute Construed.*—*Act Requiring Notice of Arrival of Trains.*—*When Operative.*—*Acts of Servants of Same Master not Interstate Commerce.*—The act requiring notice of the arrival of trains, etc., is operative only when the company or person operating a railroad possesses the information, or the means of conveying such information to the point where it is to be noted, and the fact that to carry out the law, as required by the statute, would necessitate the transmission of knowledge belonging to the master by a servant to a servant of the same master in another State, does not impose any restrictions to the freedom of commerce, and would not be an interference with interstate commerce, for the reason that the act of the servant or servants is the act of the master, and a person can not carry on commerce with himself.

STATUTE CONSTRUED.—*Penal Statutes Strictly Construed.*—*Common Sense View.* —*Meaning of Words.*—*What is not a Violation of Rule.*—Where a court, in construing a penal statute, takes a common-sense view of the statute as a whole and adopts the sense of the words which best harmonizes with the object and intent of the Legislature, there is not a violation of the rule which requires that such statutes shall be strictly construed.

SAME.—*Act not in Conflict with Section 2 of Article 8 of Constitution.* —*Disposition of Money Collected by Fines and Forfeitures.*—*Distinction Between Criminal and Civil.*—That part of the statute which provides that the penalty for violation of the act shall be paid into the county treasury for the use of the county is not in conflict with section 2 of article 8 of the Constitution, which provides that fines assessed in breaches of the penal laws of the State shall go into and be a part of the common school fund. Such section of the Constitution only has reference to moneys obtained as a penalty for the violation of the criminal laws of the State, and forfeitures in criminal cases.

SAME.—*Legislative Discretion*—*Interest of Prosecuting Attorney in Amount Recovered.*—*Validity of Act.*—The fact that the law gives to the prosecuting attorney an interest in the amount recovered does not affect the validity of the law, as that is a matter in the discretion of the Legislature in fixing the compensation of such officer.

From the Greene Circuit Court.

*J. T. Dye, S. Stansifer, J. T. Hays* and *H. J. Hays,* for appellee.

*W. C. Hultz* and *O. B. Harris,* for appellant.

The State *v.* The Indiana and Illinois Southern Railroad Co.

OLDS, C. J.—This suit was brought by the prosecuting attorney of Greene county, Indiana, to recover penalties under an act of the legislature requiring persons and corporations operating railroads to place blackboards in conspicuous places at their stations, and write upon them the fact as to whether or not the trains stopping at such stations are on time, and if late, how much.

The complaint consists of numerous paragraphs. A demurrer was addressed to the complaint for want of facts, and sustained, exceptions were reserved, and this appeal was prosecuted, and such ruling assigned as error. The error assigned presents the question as to the validity of the statute upon which such action is based. Section 1 of the statute, approved March 9, 1889, reads as follows: " That every corporation, company or person operating a railroad within this State shall, immediately after taking effect of this, act, cause to be placed in a conspicuous place in each passenger depot of such company erected at any station in this State, at which there is a telegraph office, a blackboard at least three feet long and two feet wide, upon which such company or person shall cause to be written, at least twenty minutes before the schedule time for the arrival of each passenger train stopping upon such route at such station, the fact whether such train is on schedule time or not, and if late, how much." Section 2 provides " That for such violation of the provision of this act, in failing to report or in making a false report, such corporation, company or person so neglecting or refusing to comply with the provisions of this act shall forfeit and pay the sum of twenty-five dollars, to be recovered in a civil action to be prosecuted by the prosecuting attorney of the county in which the neglect or refusal occurs, in the name of the State of Indiana, one-half of which shall go to said prosecuting attorney and the remainder shall be paid over to the county in which

such proceedings are had, and shall be a part of the common school fund."

Numerous objections are urged to the validity of this statute.

Some criticism is made in regard to the wording of the statute, in that it is indefinite and inoperative, for the reason that it provides that a "corporation, company or person" operating a railroad shall place in the passenger depot of such "company" a blackboard upon which such "company or person" shall cause to be written, etc. It is contended that as it is a penal statute it must receive a strict construction, and that nothing can be supplied as intended by the Legislature to determine its meaning, and, therefore, the statute does not apply to corporations for the reason that the word corporation is omitted, the statute providing that blackboards shall be placed in the company's office, and that the company or person shall cause to be written upon the board. The further objection is made that the statute provides that the blackboard shall be placed in each passenger depot located at any station at which there is a telegraph office, and that a passenger depot is commonly understood to be a house for the accommodation of passengers, while a station is a place such as a city, town and intermediate way stations where trains stop, so that if there is a telegraph office in the city or town where the railroad company has a passenger depot, no difference to whom the telegraph line belongs, or by whom operated, or whether it has any connection with the operation of the railroad or not, yet at each passenger depot within such city or town there must be placed a blackboard, upon which shall be written the fact whether the trains are on time, and if late, how much. It is true that penal statutes, as a rule, are to receive a strict construction, but this rule is not violated by adopting the sense of the words which best harmonize with the object and intent of the Legislature, and the whole context of

the statute must be construed together. Courts are to take a common-sense view of the statute as a whole, and if by so doing and giving to the words used a reasonable construction, the object of the Legislature can be definitely ascertained and carried out, the statute must be upheld, if not it must fall. See *State* v. *Hirsch*, 24 N. E. Rep. 1062.

The draftsman was careless in the use of language in constructing this statute. It might have been framed so as to have avoided the criticism urged, but we think the intent and object of the Legislature is clear and certain, notwithstanding it is awkwardly expressed.

It is manifest and certain that it was intended to require all persons, whether natural or artificial, who were engaged in operating a railroad in this State to put up in a conspicuous place at each passenger depot provided for the use of passengers traveling upon such railroad, in connection with which depot there was a telegraph office, a blackboard, and to enter upon such blackboard at least twenty minutes before the schedule time for the arrival of each train the fact whether such train is on time or not, and if late, how much. By " passenger depot" was not meant merely the station-house built for the accommodation of passengers, but the grounds prepared and used as depot grounds for the benefit of persons traveling upon the particular railroad, and used by the company, at such point, in operating it as a common carrier of passengers.

It is evident that it was intended that a board should be put up at every station where the train was stopped, if there was a telegraph office at such point, at which office was received information as to the time of the arrival of trains at such stopping place, and it is equally certain that it was not intended to require such notices written if there was not a telegraph office at such place, which received information as to the time of the arrival of trains. It is not essential that such telegraph office should be in

the house built for passengers, but if there is an office at such stopping place operated in connection with the railroad, receiving and giving information as to the time of arrival and departure of trains on such road, there would be a liability for failure to write the notice required by the statute. The word station, as used in the statute, is synonymous with the word passenger-depot, meaning the place—the grounds and the buildings—prepared for and used by the traveling public at such point in waiting for, taking and leaving the trains, and by the company in operating the road at that point. As to just what constitutes a passenger depot or a station at a particular place is a question of fact.

It is next contended that section 2 only provides a penalty for failing to report, or in making a false report as to whether a train is on time, or if late, how much, and that no penalty can be incurred until a blackboard is put up on which to note the fact as to whether the trains are on time or late, and if late, how much. We can not concur in this interpretation of the statute. The plain and evident intention of the statute is that the object sought is to require the noting of the fact as to whether trains are on time or not, and if late, how much, and the putting up of blackboards is a mere incident. Section 2178, R. S. 1881, provides a penalty for failing to sound the engine whistle upon approaching a road crossing, at a distance of not more than one hundred nor less than eighty rods from such crossing; and section 4020 makes it the duty of railroad companies to have attached to such engine a whistle and bell. We do not think that the penalty in section 2178 could be avoided by a failure to comply with section 4020 in providing a whistle and bell for each engine, and yet, if the contention of counsel for the appellees be correct, railroad companies might, with impunity, run engines without any whistle or bell attached, and the persons

in charge of the engines would not be liable to the penalty prescribed for failure to sound them.

Section 4020, as originally passed, Acts of 1879, p. 173, made it the duty of railroad companies to have attached to each and every locomotive engine a whistle, and made it the duty of the engineer, or other person in charge of an engine, on approaching a road crossing, to sound the whistle at a distance of not more than one hundred nor less than eighty rods, and to continue to sound it until the engine passed the crossing. Section 2 of the act provided a penalty of not less than $10 nor more than $50 for a violation of the provisions of section 1, and this act was held to be constitutional in the case of *Pittsburgh, etc., R. W. Co.* v. *Brown,* 67 Ind. 45.

Indeed, to hold the law under consideration void, on the grounds contended for by counsel, would be to hold that a party can avoid the penalty prescribed by the statute by a failure or refusal to comply with a duty imposed upon him by the same statute. In other words, the law makes it the duty of persons operating a railroad to put up blackboards at such stations where there is a telegraph office, and to write on the same the fact as to whether or not each train is on time, and if late, how much, and prescribes a penalty for failure to note on the board the fact as to whether or not each train is on time, etc. The contention is that the penalty can be avoided by a refusal or neglect to perform the duty of putting up the blackboard, for the reason that this duty precedes the entering of the fact as to the time of the trains. We do not think a party can avoid the doing of an act, for the omission of which a penalty is prescribed by statute, by a failure to do what is necessary to be done in performing the act. If the act had made it the duty of all persons and companies operating railroads within this State to enter upon a blackboard in a conspicuous place, at each station where there was a telegraph office, twenty minutes before the sched-

ule time of each train, the fact as to whether or not such train was on time, and if late, how much, and prescribing a penalty for omitting to make such entry, the operators of railroads would have been compelled to have provided the means of carrying out the law, and complying with its provisions. The imposing of the duty to do a certain thing carries with it the doing of such things as are necessary to perform the duty commanded.

The statute, by making it the duty of persons or companies operating railroads to enter the fact as to the time of the arrival of trains upon a blackboard in a conspicuous place at the station, imposes upon such persons the necessity and burden of placing blackboards in conspicuous places, for they could not make such entries without doing so, unless they were already provided. The duty of putting up blackboards would be imposed if it were not specifically stated in the act. It is suggested that railroad companies might be compelled by mandate to put up the boards, and when compelled to put them up, then they would be liable for the penalty for a failure to enter the fact required on the boards. If the theory of counsel is correct, this would not avoid the objection urged to the law, for if the argument be carried to its legitimate length, and the technical and strict construction contended for placed upon the statute, it requires that "such company or person shall cause to be written, at least twenty minutes before the schedule time for its arrival," etc., "the fact whether such train is on schedule time," etc., and if there were blackboards up, it might then be said that it required chalk or some other like substance to write upon the board, and there is no provision for compelling the company to provide chalk and no penalty for failure to provide it, and as it is necessary to have something to write with before you can write, a penalty could not arise for failure to write, unless you have something to write with. We do not think statutes should be construed by

such a technical rule. The object of the statute is to give notice to the traveling public, as to whether or not the trains are on schedule time, and if late, how much, and for this purpose it makes it the duty of the company to enter the fact upon a blackboard at all important stations, and provides a penalty for failure to do so, and it is the duty of railroad corporations, companies and persons operating railroads to provide the necessary means to comply with the law, and to comply with it to avoid the penalty prescribed.

It is suggested that the statute is repugnant to the Constitution, on the grounds that it is class legislation, and only applies to stations where there is a telegraph office. The law applies alike to all persons operating railroads, and to the same class of stations, and is uniform in its application. It does not designate at what stations the company shall maintain a telegraph office. That is left to the discretion of the companies to determine at what points along the line of the road it is necessary to maintain telegraph offices to properly operate the road and transact the business of the company, and the statute does not impose on the companies the burden of maintaining an office at points not necessary for the purpose of properly operating the road, but does impose the duty on the companies of designating the fact as to the arrival of trains at all points where it is necessary, and where they do maintain a telegraph office in connection with the road, and this duty is imposed alike on all companies operating railroads. The court judicially knows that telegraph lines are maintained, operated and used in connection with railroads, and that it is necessary to do so to properly operate a railroad, and give advice as to the time of running trains, and the arrival of them at certain points along the line, and in directing the running of trains, and transacting the business of the road; that the telegraph is generally used and is necessary in connection

with a proper system, in operating a railroad. The fact that some company may operate a line of road by telephone, or some other means of communication, does not invalidate the law on account of class legislation, for the legislature has not seen fit or deemed it necessary to require the duty of any other roads, except those operated by means of the telegraph, and to require the information noted when there is a telegraph office at their station. All roads may come within this rule, and all companies or persons that do operate a railroad by telegraphic information, and have stations at which there is a telegraph office maintained, come within its provisions. We do not think the statute subject to the objections urged, that it is class legislation. *Hancock* v. *Yaden*, 121 Ind. 366 (374).

It is further contended that the statute is in conflict with section 2, article 8 of the Constitution, providing that the common school fund of the State shall consist of, and be derived from, among other things, "the fines assessed for breaches of the penal laws of the State, and from all forfeitures which may accrue." In the case of *Burgh* v. *State, ex rel.*, 108 Ind. 132, a question very similar to this was passed upon and decided adversely to the contention of counsel for the appellee. The statute, sec. 6339, R. S. 1881, provided that, "If any person or corporation shall give a false or fraudulent list, schedule, or statement required by this act; * * * he or it shall be liable to a penalty of not less than fifty dollars nor more than five thousand dollars, to be recovered in any proper form of action in the name of the State of Indiana, on the relation of the prosecuting attorney. The assessor shall forthwith notify the prosecuting attorney of such delinquency or offense, and he shall prosecute such offender to final judgment and execution; and such fine, when collected, shall be paid into the county treasury for the use of the county, and the prosecuting attorney shall receive ten per centum commission on all moneys so collected and

paid in, and a docket fee of ten dollars, to be taxed and collected with costs in such action," etc., and it was contended that this section was in violation of said section 2, article 8, *supra*. The court in that case says, "Section 2 of article 8 of the Constitution provides that fines assessed for breaches of the penal laws of the State shall go into and be a part of the common school fund. It is contended that as the above section 6339 requires the penalty therein provided to be paid into the county treasury for the use of the county, it is in contravention of the above constitutional provision. The answer is that the constitutional provision has reference to fines assessed in criminal prosecutions, and the penalty provided in section 6339, *supra*, is not a fine in that sense. It is not to be recovered by a criminal prosecution, but by a civil action. At one place in the section the penalty is spoken of as a fine, but the whole section shows that it is not a fine in the sense in which that word is used in the above section of the Constitution." There is no difference in these two statutes, in so far as the penalty is concerned for the violation of the act. Each provides a penalty collectible in the same manner, and if the legislature may provide that it shall go into the county treasury for the use of the county, it may provide that it may go in any other direction, in so far as this provision of the Constitution is concerned. If the Constitution does not require that such penalty shall go into the school fund, then it may be made a fund for the payment for services of public officers. It is urged that such provision prevents a due process of law, in that it gives to the prosecuting attorney, the officer of the State, charged with the prosecution of the action, an interest in the amount recovered. We do not think this objection tenable. It has been the long established system in this State for the prosecuting attorneys to secure a fee taxed against and recovered from the defendant in criminal prosecutions, and his fee depends upon the suc-

cess of the prosecution. He is, likewise, allowed a commission for the collection of forfeited recognizances. There can be no difference as regards the effect upon the officer, whether he receives a fee to be taxed against and recovered from the defendant, which depends upon the successful prosecution of the action, and allowing him a certain per cent., or a certain portion of the amount recovered as a compensation for his services. As to whether it is good policy to do either or not is a matter with the Legislature. They have the right, as we think, to do either.

It is further contended that but one penalty can be recovered for the violation of the act. It seems to us that the statute is clear upon this subject. It provides "that for each violation of the act, in failing to report or in making a false report, such corporation, company or person so neglecting or refusing to comply with the provisions of this act shall forfeit and pay the sum of twenty-five dollars," etc. The first section makes it the duty of persons operating a railroad, twenty minutes before the schedule time for each passenger train stopping at a station where there is a telegraph office, to write the fact as to whether such train is on time or not, and if late, how much. This creates a duty to note the fact in regard to each train stopping at such station, and the second section creates a forfeiture for failing to note the fact as to any passenger train stopping at such station; also creates a forfeiture for making a false report as to how much the train is late. Of course, if there is a failure to make any entry, there would be but one forfeiture as to such train, or if there is a false entry, there would be but one forfeiture as to such train. There can only be one forfeiture as to one train at a particular station during one trip, and that may be either for a failure to make the entry, or for making a false entry, whichever may be the fact.

There is a further objection urged to the law, which is that the statute is void because it assumes to regulate in-

The State v. The Indiana and Illinois Southern Railroad Co.

terstate commerce.   This objection is stated by one of the learned counsel for the appellee as follows:   "It applies, in express terms, to every corporation, company or person operating a railroad in this State.   It imposes penalties for the failure to give information when the same can only be obtained by the action of telegraph companies over whom such corporations engaged in interstate commerce have no control."   The construction we have heretofore, in this opinion, given the statute, in so far as it refers to receiving information from a telegraph company over which the company have no control, avoids the objection urged.   The statute was not intended to require the entry upon a blackboard where there was no telegraph operated in connection with the railroad, but at stations where there was a telegraph office in connection with the railroad, furnishing such information as the railroad company might desire in connection with the operation of the road. While the statute deals with persons and corporations engaged in interstate commerce, yet we think that the statute is a proper police regulation which in no way interferes with interstate commerce, and is a regulation which is in no way sought to be exercised by the United States, and, hence, is within the power of the Legislature of the State to enact.   It simply imposes on the company or person operating a railroad the burden of ascertaining in advance of the arrival of a train at a particular station, the time when it will arrive and note it upon a blackboard for the benefit of the public.   This is required to be done when the company or person possesses the information, and has the means within its power to convey such information to the point where it is to be noted.   It is information possessed by the company itself, and requires only the command of the master to note it.   The company or person operates the whole line of road.   It is present at every point along the line by its officers and servants.   It knows

at all times where its trains are and what time they are scheduled to make, and this statute calls upon them to note the facts designated upon blackboards, at certain stations, in advance of their arrival. The statute simply commands the company to enter at stations in this State the information which it has, and which it has the power of communicating to that particular point or station. Counsel cite, in support of their position, the case of *State, ex rel.*, v. *Woodruff etc. Co.*, 114 Ind. 155, and quote from the opinion language holding that in matters of commerce between the States, the power of the Federal government is exclusive and supreme.

Counsel thus state the proposition, that " this act imposes penalties on corporations engaged in interstate commerce for failure of telegraph companies to send telegrams from other States," and counsel, in support of this position, quote from the decision of the United States Supreme Court, in the case of the *Western Union Tel. Co.* v. *Pendleton*, 7 Supreme Court Reporter, 1128, involving the validity of a statute of this State, making telegraph companies liable for failure to deliver messages, in which opinion the court says: " In these cases the supreme authority of Congress over the subject of commerce by the telegraph with foreign countries or among the States is affirmed whenever that body chooses to exert its power; and it is also held that the States can impose no impediments to the freedom of that commerce," and in that case the court further holds that " Whatever authority the States may possess over the transmission and delivery of messages by telegraph companies within her limits it does not extend to the delivery of messages in other States."

To the doctrine enunciated in these decisions, while we think it must be conceded that some of the language used carries it to the border line, yet we readily yield our assent to it, but the cases referred to enunciated and applied the principles laid down in cases where it involved the rights

The State *v.* The Indiana and Illinois Southern Railroad Co.

of the companies, as exercised in the discharge of their duties while engaged in interstate commerce, or where the State sought to impose a penalty or tax operating as an impediment to the freedom of commerce, while in this case no such thing is sought to be done. This statute is but a police regulation within this State. The fact that the company or person required to carry it out and comply with the statute are required to bring into use knowledge which they possess or is possessed by other servants situate in another State does not, as we think, impose any restrictions to the freedom of commerce. Indeed, the communication of the information possessed by the servants of the company at one point on the line of the road to those at another point on the line can not in itself be termed commerce in the strict sense of the word. " Commerce," says Webster, is "the exchange or buying and selling of commodities; especially the exchange of merchandise on a large scale between different places or communities; extended trade or traffic;" and it is defined in the Century Dictionary as "Interchange of goods, merchandise or property of any kind; trade; traffic; used more especially of trade on a large scale, carried on by transportation of merchandise between different countries, or between different parts of the same country, distinguished as foreign commerce and internal commerce; as the commerce between Great Britain and the United States, or between New York and Boston; to be engaged in commerce." And when existing or taking place between different States, or persons in different States, it is termed interstate commerce. One can not trade or traffic or buy and sell with himself, though he acts by or through his agent or servant, for their acts are all his acts and all result to his benefit. One is not engaged in commerce by passing an article of merchandise from one of his hands to the other, or by having one of his servants pass it to another, although it cross the line between two States in

the transit, though he may use the same hands and the same servants in the business of interstate commerce. Railroad companies are engaged in interstate commerce, because their railroads are used for transportation and conducting interstate commerce. Telegraph companies are held to be engaged in interstate commerce, as they convey information from citizens of one State to those of another. The railroad company and the telegraph company each occupy contract relations with other parties in the transportation of articles of merchandise and information or news. One may possess a letter or other writing, deposited with his agent in another State, which may contain information which it is important for him to know in order to intelligently do an act or perform a public duty in this State. In such case, we think it can not be said that he is engaged in commerce, or in interstate commerce, if he go and get the letter and bring it to this State, and avail himself of the information, and how can it be different in this respect if he direct his agent to bring the writing to him; nor is it interstate commerce in the discharge of the duties of the master whose one servant conveys the information he possesses, which belongs to the master, to the other servant, even though it be conveyed through a third servant, whether it be a person or a telegraph company who act as the servant of the master, in conveying the information. As we have said, the statute is but a regulation for the benefit of the public. It is held that parties in crossing the track of the railroad company must avail themselves of such knowledge as they possess in regard to the time of the running of trains upon the road. A party knowing a train was due at a time he is about to cross a track should use care to avoid injury. So this information to be noted on blackboards is as well for the persons having business across or about the railroad as for those who are traveling upon its trains. If it can be said that this legislation is repugnant to the

Constitution, by reason of the fact that the information to be noted must be received from an agent in another State, through the agency of a telegraph company engaged in interstate commerce, so would legislation requiring signals to be given or watchmen to be kept at certain points upon the railroad, in case the superintendent, who gave instructions as to the running of trains and the manner in which they were to be run, resided in another State, and the direction to the agents or servants operating the road in this State must be communicated to them by means of the telegraph. In *Smith* v. *Alabama*, 124 U. S. 465, in speaking of the validity of State legislation relating to railroads, it is said : " The width of the gauge, the character of the grades, the mode of crossing streams by culverts and bridges, the kind of cuts and tunnels, the mode of crossing other highways, the placing of watchmen and signals at points of special danger, the rate of speed at stations and through villages, towns, and cities, are all matters naturally and peculiarly within the provisions of that law from the authority of which these modern highways of commerce derive their existence. The rules prescribed for their construction and for their management and operation, designed to protect persons and property otherwise endangered by their use, are strictly within the limits of the local law. They are not *per se* regulations of commerce; it is only when they operate as such in the circumstances of their application, and conflict with the expressed or presumed will of Congress exerted on the same subject, that they can be required to give way to the supreme authority of the Constitution."

While this statute may be on the border of legislative authority, yet we do not think it attempts to regulate interstate commerce or to interfere with it, nor that it places any impediments to the freedom of commerce so as to render it invalid.

We have considered and passed upon all the material questions discussed in the case.

While the statute is clumsily worded, yet we think its meaning and object is clearly apparent, and not subject to the objections urged against it.

It is suggested that the blackboards should be put up immediately after the taking effect of the act, and that some of the violations are alleged to have occurred upon the day the act took effect, and there was no opportunity given to comply with the law. This is not an objection to the law. Possibly, persons would have a reasonable time to comply with the act in this respect by putting up boards after it went into effect, but we do not intimate our opinion upon this question, as it is not before us.

No objection is urged to the averments of the complaint.

The conclusions we have reached being adverse to the rulings of the Circuit Court, the judgment must be reversed.

Judgment reversed with costs, with instructions to overrule the demurrer to the complaint.

Filed December 13, 1892.