PROVOSTY, J.
The defendant’s railroad passes alongside the lots of the plaintiffs in the city of Shreveport. The place is a hill, with a cut for the roadway, the sides of the cut sloping as usual. The defendant was in the act of erecting a fence on the edge of the bank on the top of the cut, when the plaintiffs brought the present suits, claiming the land up to the line in the center of the railroad track, and enjoining the erection of the fence. The three cases involve the same issue, and have been consolidated for trial. The titles of the plaintiffs call for the center of the railroad as a boundary. Defendant claims no other title than such as it and its authors may have acquired by the prescriptions of 1, 10, and 30 years.
Defendant acquired by purchase more than 10 years before the suit, and has had the same extent of possession that its’ authors had. The road was constructed in 1850, and has been in operation continuously ever since, except for a short time during the *794 war, when the rails were taken up to be used in making a gunboat. It may be well to mention that at the time the road was constructed, and the excavation in question made, the owner of the land was living in Shreveport, but whether on the property in question, or not, the evidence does not show; and it may be well to mention also that, apart from this fact of the owner of the land having been present, the circumstances under which the railroad began its occupancy are not shown.
There can be no question that the railroad has acquired by prescription up to the extent of its possession. What that extent has been, is the sole question in the case. A fair way to get at it would be, it seems to us, to restore mentally the original condition of things, and inquire how much the railroad would have had to expropriate and pay for in order to get a passage through this hill. Presumably, it has kept all that it originally took possession of and excavated; and, presumably, it took possession of as much as it would have had to expropriate and pay for if it had proceeded by expropriation. Now, since it could not have pretended to the right of excavating the land of the abutting proprietor, it would have had to expropriate and pay for the full extent of the space required for the excavation. The evidence shows, and it is a matter of common observation, that such excavations are usually made with sloping sides; and the evidence also shows that a drainage ditch is indispensable to the roadbed. Enough, then, had to be taken for the roadbed and the ditch at the bottom of the cut, and for allowing a slope to the sides; and, in the absence of proof of the contrary, the presumption is that that much was taken, and has from that time been actually occupied.
The rule by which the extent of a railroad’s user on level ground is measured is not a Procrustean law, to which all cases must conform, regardless of their modifying circumstances. On level ground the railroad has actual need for, and presumably has originally .actually taken or been deeded, only enough space for its roadbed, ditch, and telegraph; but it has need of more than this in passing through a hill of a formation such as would be liable to crumble or cave in if the walls of the cut were made perpendicular. For passing through such a hill it must have at least as much more space as 'will afford room for a masonry wall or other artificial support for the sides of the cut; and since in this country it is not customary to provide this artificial support, but to obtain the same result by allowing a slope to the side of the excavation, the user must be held to include the space required for this slope. That the extent of a railroad’s user is not restricted to the pedis possessio, but depends upon the circumstances of the case, see Elliott on Railroads, § 948. It stands to reason that a railroad making and using' a cut through a hill for the passage of its road does not take possession of and use only the bottom of the cut, but the entire cut; that is, including the sides. It could be otherwise only if the sides of a hole in the ground were no part of the hole.
The trouble is, however, in this ease, that in the course of time the sides of the cut have washed in, and that it is now impossible to tell with certainty what was the original limit. We think that under these circumstances the task of the court must be to ascertain this limit as best can be done from the evidence, and that necessarily the work must be one of approximation only.
Our Brothers of the Court of Appeal got over the difficulty by allowing sufficient space for a ditch, as under the evidence they were justified in doing, and as the district judge had done, and then adopted the telegraph line, together with three feet beyond, as a limit; the three feet being allowed as elbow room for the repair of the telegraph. It may be that this adoption of the telegraph line as a limit, with allowance of some elbow room for repair, will prove to be the only practical solution of the case, but we are not satisfied as yet that such is the fact. The testimony bearing on the extent of the increase in the width of the cut is so scant that we are led to suspect that the ascertainment of the limit of the original cut was not considered to be the important point in the case, and that all available evidence on the subject has not yet been produced. At any rate, we think that in the interest of justice the ease should be remanded to afford the parties another opportunity to produce evidence on this point, if any is avail *796 •able; and, besides, the present record is too jejune in respect to tbe date of the erection •of this telegraph, and also in respect to its exact location, to permit of our, as yet, adopting- this line as a basis for judgment. We agree with our Brothers of the Court of Appeal, however, that the court may take judicial notice of the fact that a telegraph is necessary for the operation of a railroad (State v. Indiana, etc., Railroad Co., 133 Ind. 69, 32 N. E. 817, 18 L. R. A. 502), and that the telegraph of a railroad usually consists ■of wires strung on posts set upright in the ground alongside of the road. The matter is one of general and common knowledge; and that courts may take judicial notice of matters of general and common knowledge, see Am. & Eng. Ency. (2d Ed.) vol. 17, p. 895; Jones on Evidence, §§ 129, 133. But we do not agree with orr Brothers that like judicial notice may be taken of the space required for the repair of such a telegraph. This appears to be a matter for expert testimony. We find that we ourselves have no idea of what this space should be. We also agree that the possession of the railroad is restricted to the original cut, and has not followed the widening of the cut. Note to Am. & Eng. Ency. of L. (1st Ed.) vol. 19, p. 20.
The injunction will have'to be maintained or dissolved accordingly as the line upon which defendant was proposing to locate its fence shall fall within or without the limit to be fixed according to the views expressed in this opinion.
One of the plaintiffs testifies that eight or ten years before the institution of this suit he objected to the workmen of defendant widening or cleaning out the ditch at the base of the slope, and that the workmen desisted; and each of the other plaintiffs testifies that about a year before the institution of the suit he in a like manner objected to the workmen of defendant taking earth on the side of the embankment, and that the workmen desisted. The ease was not fully argued before us on the side of plaintiffs, the only argument being that contained in the petition in which the writ is applied for; lienee we do not know positively whether these acts of disturbance to the defendant’s possession have been proved merely as part of the facts and circumstances of the case, to be taken into consideration in judging of the possession, or as constituting an ouster of the possession which for more than 30 years the defendant and its authors had been having-. In the former connection this evidence has had due consideration, and has been allowed all the influence it is entitled to. If, however, it has been offered to show an ouster of the 30-years possession of the defendant, it clearly fails of the purpose. After 30 years’ possession, defendant could not be ousted by mere sporadic interferences of this kind, nor by anything short of a suit or of an adverse exclusive possession for the prescriptive period. Besides, while the inference would be that these workmen desisted by direction of the railroad authorities, the fact is not shown positively.
There is also evidence to the effect that a Mr. Eord, whose relations to the defendant company are not defined, but who was professing to act for the defendant company, about a year before the institution of the suit, offered to buy from the plaintiffs 40 feet, starting from the center of the track. Here again we have to confess our incertitude of the purpose for which the evidence is offered. If to show a renunciation or waiver by defendant of rights theretofore acquired by prescription or otherwise, it fails of the purpose, for the reasons that nothing shows Mr. Eord had authority to renounce or waive the acquired rights of the defendant company. If for the purpose of impeaching the asserted possession of defendant, it cannot, under the peculiar conditions of the case, carry much weight. This agent of the defendant did not know then any more than he knows now, or than this court knows after reading the evidence, what, exactly, is the limit of the railroad’s possession; and therefore any admissions of his on the subject, unless authorized by his principal, and intended to operate as a renunciation, are not determinative of anything. The case is one where a line once well defined has become uncertain in the course of time by the gradual operation of insidious agencies. How should this agent or the railroad itself know more about this line than anybody else, unless, indeed, that defendant has access to the original surveys, which is not pretended? Besides, there is evidence that the railroad was desirous of laying another track. *798 for which some space beyond that claimed .in this suit was needed, and that the 40 feet would have given this additional space. Moreover, the desire to put an end to the uncertainty that has led to the present lawsuit would itself have afforded an ample motive for such an offer.
It is therefore ordered, adjudged, and decreed that the judgments of the Court of Appeal and of the district court be set aside, and that the ease be remanded for further trial in accordance with the views herein expressed; the plaintiffs to pay the costs of the Court of Appeal, and the defendant to pay the costs of this court; the costs of the district court to await the determination of the controversy.