BUTTON, Appellant, vs. METCALF, Respondent.

*September 4 — September 29, 1891.*

*(1, 2) Instructions to jury: Fraudulent conveyance: "Preponderance of testimony." (3) Appeal: Printed case.*

1. A stock of goods belonging to a partnership was sold under execution to certain creditors who afterwards sold it to a brother of the partners. Subsequently the goods were seized and sold on executions of other creditors against the partners. In an action by the brother against the sheriff for the conversion of the goods by the latter seizure, an instruction, thrice reiterated, to the effect that if the plaintiff bought the goods in part with the funds of the partners his purchase was fraudulent, is *held* erroneous; and the error was not cured by the statement, elsewhere in the charge, that the question of good faith was involved, and that if plaintiff bought the goods in part with the funds of the partners, for the purpose of holding them until they could safely take them in their own names, it might be a fraud on their creditors.

2. A charge that preponderance of the testimony "is an expression that may mean considerable, and it may not mean much, depending on how you understand it; but in the final analysis it means this: What do you think about it, having your minds guided by the evidence?"— is criticised as giving too elastic a definition and as tending to minimize the importance of the rule.

3. Where the appellant urges that the verdict was against the evidence, a full statement of the evidence may properly be inserted in the printed case.

APPEAL from the Circuit Court for *Jackson* County.

Trover, to recover the value of a stock of merchandise and store fixtures, with damages for the breaking up of plaintiff's business. Defendant justified the taking of the goods as sheriff under executions against Eugene Button and Edwin Button, copartners, under the name of Button Bros., and claimed that the property was in fact the property of Button Bros., they having paid a large part of the consideration, and having caused the title to be taken in plaintiff's name with intent to hinder and delay their creditors.

The seizure was made May 25, 1889. It appears from the evidence that in August, 1888, Button Bros. were doing business in the store where the seizure was made, with the fixtures and a part at least of the stock of goods in question, and that the property was then attached by Hogan & Anderson upon claims which ripened into judgments and executions, upon which the property was sold October 9, 1888, and bid in by Hogan, or by Hogan & Anderson, the attaching creditors. The defendant claimed, and offered some testimony tending to show, that an arrangement was made previous to this sale between the Button Bros. and the plaintiff, by which Hogan & Anderson were to bid in the goods for $1,275, and afterwards *Albert Button*, the plaintiff, was to buy the goods back and take title thereto, using as much money as the Button Bros. could furnish him for that purpose, and giving security for the balance on his

own property, and holding the goods until he was paid and the Button Bros. got straightened up with their creditors. It was undisputed that plaintiff did buy the goods of Hogan in November, 1888, and gave Hogan & Anderson a mortgage for $850, as part payment for the goods, and plaintiff claims he also paid the balance of $430 out of his own funds.

At the beginning of the trial the defendant admitted that Hogan & Anderson had a good title to the goods in question. At the close of plaintiff's case, the defendant qualified this concession to this extent: "We do not claim that any fraud existed on the part of Mr. Hogan; that there was any collusion between Hogan and Button Bros.; but as to the consideration, and how these goods were taken, the negotiations, etc., that we do not concede to be fair, but do claim that it was fraudulent. . . . The whole question is, What occurred between these brothers?"

The jury returned a verdict for the defendant, and from the judgment entered thereon plaintiff appeals.

For the appellant there was a brief by *Morrow & Masters*, and oral argument by *J. M. Morrow*.

For the respondent there was a brief signed by *Fruit & Brindley*, of counsel, and *Castle & Waldo*, attorneys, and oral argument by *J. J. Fruit*.

WINSLOW, J. This judgment must be reversed on account of manifest error in the charge of the court. The circuit judge said to the jury: "Really, all this simmers itself down to the question of what funds did he buy these goods with? Were they his own, or were they the funds of Button Bros.?" And again: "Does the evidence make you think that this was an honest transaction, that *Albert Button* bought the goods for himself with his own funds, or do you think from the evidence that he bought them in part with funds of Button Bros.? In the one case it is an

honest transaction as the law views it. In the other case it is fraudulent, and you are to decide that just as you think the truth is." And again, at the close of the charge: " So far as the law is concerned, it is in a very small compass, as applied to this case, and it rests on just that one question, I think: Whose funds bought these goods from Mr. Hogan? " Although the jury were told elsewhere in the charge that the question of good faith was involved, and that, if plaintiff bought the goods in part with the funds of Button Bros., and for the purpose of holding them until they could safely take them in their own names, it might be a fraud on the creditors of Button Bros., because it would naturally tend to hinder and delay them, still this can hardly be held to correct the evil of the thrice reiterated instruction that the sole question was, Whose funds purchased the goods? The charge concludes with this statement, and we think the jury must naturally have understood that they were only to investigate that one question, and, if they found that any funds of Button Bros. were used in the purchase, their verdict must be for the defendant.

Conceding that there might be a fraudulent scheme between the Button Bros. and *Albert Button* to which Hogan & Anderson were not parties (a point not decided), by reason of which the title taken by *Albert Button* from Hogan & Anderson could be successfully attacked by creditors of Button Bros., it is plain that there must be something more proven to establish the fraud than the mere fact that Button Bros. furnished part of the funds. This one fact constitutes no fraud. It would simply constitute *Albert Button* a debtor of Button Bros. to the amount of funds so furnished. There must have been a secret trust reserved by which the title was to come back at some time to Button Bros., and this element was entirely omitted from the portions of the charge first quoted.

Criticism was also made by counsel upon that part of the

Button vs. Metcalf.

charge which deals with the question of preponderance of the evidence. It is as follows: "You are to be satisfied by a fair preponderance of the testimony. That is an expression that may mean considerable, and it may not mean much, depending on how you understand it; but in the final analysis it means this: What do you think about it, having your minds guided by the evidence?" While we should not, perhaps, feel constrained to reverse the judgment on this ground alone, were there no other error in the case, we cannot resist the conclusion that this definition of "preponderance of evidence" is too elastic to be accurate. It tends to minimize the importance of the rule, and lead the jury to believe that it in fact means little or nothing. We think the plaintiff was certainly entitled to have the jury instructed (if instructed at all on the subject) that preponderance means greater weight of evidence, or evidence which is more credible and convincing to the mind, or some equivalent expression. In this connection we may say that, after a patient examination of the case, we deem it extremely doubtful whether a verdict which finds that any portion of the funds of Button Bros. went into this purchase could be sustained upon the evidence. The evidence to that effect is certainly very vague and shadowy.

As a new trial will be necessary, it is not deemed necessary to discuss the other alleged errors complained of by appellant.

The point made by respondent that the printed case is unnecessarily voluminous is not well taken. One of the points made by appellant, and cogently argued, was that the verdict was against the evidence, and, for the purpose of properly presenting and arguing that point, a full statement of the evidence was necessary.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.