The Pennsylvania Co. *v.* The State.

No. 16,920.

## THE PENNSYLVANIA CO. *v.* THE STATE.

CONSTITUTIONAL LAW.— *Railroad.*— *Blackboard Law.*— *Time of Arrival of Train, etc.*—The discrimination against travelers from railway stations at which there are no telegraph offices, in sections 5186–5187, R. S. 1894, requiring railroads to place in each passenger depot at any station where there is a telegraphic office a blackboard, and to note thereon whether schedule trains are on time, and if late how much, does not conflict with Ind. Const., article 1, section 23, forbidding the granting to any citizen or class of citizens privileges or immunities which on the same terms shall not equally belong to all citizens, or with the provision of the federal constitution, that no State shall deny to any person within its jurisdiction the equal protection of the law.

STATUTE.— *General.*—*Legislative Discretion.*—Whether a general law could be made applicable within the meaning of Ind. Const., article 4, section 23, providing that " In all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State," is, as to any case not specially enumerated, a legislative and not a judicial question.

SAME.—*Blackboard Statute.*—*Local or Special.*—*Penalty.*—*Judgment. —Prosecuting Attorney.*—The act of March 9, 1889 (sections 5186–5187, R. S. 1894). is not a local or special law within the Ind. Const., article 4, section 22, forbidding local or special laws for the punishment of crimes and misdemeanors, as requiring a special form of judgment, or a judgment in favor of the prosecuting attorney, although a portion of the penalty recoverable by the State is to be paid to the prosecuting officer.

SAME.—*Uniform Operation.*—*General.*—A law which operates in all parts of the State in a similar manner where the same circumstances and conditions exist. is a law of uniform operation within Ind. Const., article 4, section 23, providing that in all cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State.

APPELLATE PROCEDURE.—*Review of Former Decision.*—*Constitutional Question.*—*Statute.*—A former decision by the Supreme Court upon the constitutionality of a law will not be reviewed by the same court in another action, although the personnel of the bench has changed in the meantime, and some other court might, if the question were originally presented to them, incline to a different view from that formerly held.

The Pennsylvania Co. *v.* The State.

STATUTE OF LIMITATIONS.—*When Will Not Run Against the State.—Penalty.*—The two years' limitation under section 294, R. S. 1894, against actions for the recovery of a statutory penalty, does not apply to an action for such a penalty in favor of the State, as section 305 provides that limitations of actions shall not bar the State except as to sureties.

DEFENSE.—*Action by State to Recover Penalty.—Constitutional Law.* —The violation of Ind. Const., article 8, sections 2, 3, providing that fines assessed for breaches of the penal laws of the State and all forfeitures which may accrue, shall constitute a part of the common-school fund, by the provision of a penal statute, is not available in defense of an action by the State for the recovery of the penalty prescribed by such statute.

RAILROAD.—*Blackboard Statute.—Time for Necessary Provisions for Observance of Requirements.*—Railroad companies were not entitled to any time after the proclamation of the act of March 9, 1889, which took effect sixty days after its approval, to make the necessary provision for the observance of its requirements as to noting upon blackboards to be maintained at stations whether schedule trains are on time, and, if late, how much, as it is provided that compliance shall begin "immediately after taking effect of the act."

From the Scott Circuit Court.

*S. Stansifer, B. K. Elliott* and *W. F. Elliott*, for appellant.

*W. A. Ketcham,* Attorney-General, for State.

HACKNEY, J.—This was an action by the appellee for the recovery of penalties for the violation of the act of March 9, 1889, R. S. 1894, sections 5186, 5187 ; Elliott Supp., sections 1088, 1089. The complaint was in seventy-three paragraphs, and each charged a distinct violation of said act, in the failure of the appellant to note, upon a blackboard, at least twenty minutes before the schedule time of the arrival of passenger trains, the fact as to whether such trains were on schedule time, and if late, how much. The paragraphs apply to different trains, and different days, including trains stopping at Scottsburg, from May 10, 1889, to May 19, 1889. The

complaint was filed on the 9th day of May, 1891, and summons was issued thereon, June 4, 1891. Demurrers were overruled to the several paragraphs of complaint, and the appellant answered in five paragraphs to the four affirmative paragraphs, to which demurrers were sustained. Upon a trial there was a finding and judgment in favor of the appellee for $1,400.00. Questions of the constitutionality of said act bring the appeal within the jurisdiction of this court.

The second paragraph of answer alleged that on May 10, 1889, when the act took effect, the appellant was operating 220 miles of railway, having fifty passenger stations, with depots and telegraph offices, and that when the statute took effect, the appellant, "exercising due care and reasonable expedition, proceeded to and did prepare blackboards, three feet long and two feet wide, and placed one in a conspicuous place in each of said passenger stations, including the one mentioned in the complaint, all of which was done by May 18, 1889, and it is averred that the work could not have been done within a shorter period of time." The third paragraph pleaded substantially the same facts with the conclusion, "that it reasonably and conveniently required, to-wit: seven days within which to prepare and place said blackboards as aforesaid."

The fourth paragraph alleged the placing of blackboards in the depots mentioned in the complaint by May 18, 1889; that summons did not issue until June 11, 1891, and that the action was commenced more than two years after each of the causes of action sued on had accrued.

The fifth paragraph was substantially the same as the fourth.

As will be observed, the second and third paragraphs proceeded upon the theory that after the law was dis-

tributed and had, by the proclamation of the governor, gone into effect, the companies affected by it would have a reasonable time in which to prepare and place blackboards upon which to note the time of arrival of trains, and that such reasonable time, as alleged in the third paragraph, was seven days.    In discussing the sufficiency of the complaint, the proposition is also pressed that companies were entitled to a reasonable time, after the law was declared in force, within which to prepare for compliance with its requirements.

The language of the act, as to the time when compliance shall begin is : "Immediately after [the] taking effect of this act."    If there had been an emergency clause, under which penalties would, by the letter of the law, have attached at once upon its passage, manifestly, it would have worked great hardship to hold that the Legislature meant to inflict heavy penalties for failing to do that which necessarily required time for preparation to do.    Probably, the situation thus stated would have required the holding that the word "immediately" was not employed to exclude the intervention of a reasonable time within which to prepare and place the boards required.    So we may say, with reference to the time when the law went into force, May 10, 1889, if that were the first notice that railway companies were required to take of the law.    As we find it, the law was approved March 9, 1889, and was proclaimed in force May 10, 1889, more than sixty days, and, upon the allegations of the answers, an abundant time within which to prepare for compliance with the law, and for the avoidance of the prescribed penalties.

The law, having passed without an emergency clause, was not in force until May 10, 1889 ; however, its passage by the Legislature, and the declaration of the constitution, that it should be in force from its distribu-

tion, and the proclamation of the governor, was notice to railway companies sufficient to enable them to prepare for its requirements, we have no doubt.   It is one of the frequently declared objects of section 4, article 19, of the State constitution, requiring that the subject of an act "shall be expressed in the title," "to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have an opportunity of being heard thereon, by petition or otherwise, if they shall so desire."   Cooley Const. Lim. (6 ed.), p. 171; *Henderson, Aud.,* v. *London, etc., Ins. Co.,* 135 Ind. 23 (20 L. R. A. 827).

There was the same emergency for the existence of the law between March 9th, and May 10th, 1889, as that following those periods, and the omission of an emergency clause was, probably, to enable companies to prepare to comply with the law when it should be declared that penalties were enforcible.   It is not claimed that the Legislature possessed no power to enact that penalties should attach at once upon the passage of the law, or upon the declaration that it had been published.   The contention, as we understand it, is that the Legislature will not be deemed to have intended so harsh a measure. The question being one of intention and not of power, and the word "immediately" ordinarily signifying "without interval of time," we must conclude that the Legislature omitted the emergency clause, and provided that compliance should follow "immediately after (the) taking effect of" the act, thereby intended to give to railway companies the period extending from the passage of the act to the proclamation of the governor, in which to prepare for compliance without penalties. Aside from the question of legislative intent to give such opportunity, and also of the constructive or implied

notice of the passage of the act, and presuming that power existed to enforce penalties "without interval of time" for preparation, it then becomes a question of legislative judgment not reviewable by the courts, and a question of the good faith of railway companies in possibly possessing actual knowledge of the law, but delaying beyond the period for its enforcement without steps to meet its requirements, a question not made by the answers and not subject to review.

The sufficiency of the fourth and fifth answer depends upon sections 294 and 305, R. S. 1894 (sections 293 and 304, R. S. 1881). The first provides that "For * * * a forfeiture or penalty given by statute," actions shall be commenced within two years after the cause of action has accrued. The appellant, standing upon this provision, insists that the penalties sued for accrued before May 19, 1889; that while the complaint was filed on the 9th day of May, 1891, summons was not issued and the suit not commenced, in contemplation of law, until, as the answer alleges, the 11th day of June, 1891. To this proposition is cited section 316, R. S. 1894, (section 314, R. S. 1881), which provides that "A civil action shall be commenced by filing in the office of the clerk a complaint and causing a summons to issue thereon; and the action shall be deemed to be commenced from the time of issuing the summons." In view of section 305, *supra*, we need make no decision of the force of the appellant's position thus stated, since that section provides that "Limitations of actions shall not bar the State of Indiana, except as to sureties." Very plainly, we think, the limitation insisted upon by the appellant does not apply where the cause of action, as in this case, is in favor of the State of Indiana.

Invoking the rule of a strict construction for penal statutes, appellant's learned counsel, with much ability,

VOL. 142—28

attack the act in question as void for ambiguity. The first duty of the courts, in the construction of statutes, is to ascertain the intention of the Legislature in the enactments, whether such statutes fall within the rule calling for a strict or that calling for a liberal interpretation. All of the alleged ambiguities of the act in question must be tested in the light of the legislative intention, ascertained from within the lines of the act. There is no guide to the ascertainment of legislative intention by which, in every case, the interpreters may be led, with unerring certainty, to the one conclusion, yet it is the manifest policy of the law that interpretation of a given act shall not be so varying and unstable as to yield, like the kaleidoscope, a new view as each new hand turns the instrument. While the act is not drawn with the care and skill that its importance to the public and to railway management should have required, we feel that its meaning having been considered and determined by our predecessors, a bench justly distinguished for its learning and ability, we cannot review that decision, upon the very questions then made, though, if a question of first impression, some of us might incline to a different view. See State v. Indiana, etc., R. R. Co., 133 Ind. 69 (18 L. R. A. 502); State v. Pennsylvania Co., 133 Ind. 700.

All that we have said with relation to the interpretation of the act, against the objection that it is ambiguous, may be said concerning the renewed objection, that cumulative penalties are not permitted, but that the recovery is limited to one "for each violation of the provisions of the act in failing to report, or in making a false report," and that only when a blackboard shall have been "placed in the depot 'upon which' to write the fact," etc.

It is here insisted, as it was in the cases above cited,

that the act in question violates sections 2 and 3 of Art. 8 of the constitution, which sections provide that "the fines assessed for breaches of the penal laws of the State, and *  all forfeitures which may accrue," shall constitute parts of the common school fund, and provide further that the principal of such fund "shall remain a perpetual fund," and "shall never be diminished." This proposition is directed to the penal provision of section 2 of the act which provides, "That for each violation of * * this act * * the company shall forfeit and pay the sum of twenty-five dollars, to be recovered in a civil action to be prosecuted by the prosecuting attorney * * * in the name of the State of Indiana, one-half of which shall go to said prosecuting attorney and the remainder to be paid over to the county in which such proceedings are had, and shall be part of the common school fund." The objection urged against the act, in this respect, is that the recovery, treated as a fine or as a forfeiture, was made, by the constitution, a part of the common school fund and could not be diverted therefrom or diminished by appropriating it to the payment or benefits of public officers. In addition to what was said of this proposition in the former cases, we express our conclusion that the appellant may not avail itself of this objection. The recovery, so far as offenders are concerned, is fixed, not to be recovered by the prosecuting attorney, but by the State of Indiana. If, as insisted, the provision that "one-half * * shall go to said prosecuting attorney" should violate the constitution that conclusion would not excuse the appellant from paying the penalty and would certainly not render invalid that provision which creates the penalty and subjects the appellant to its payment. If the provision that one-half of the penalty shall go to the prosecuting attorney were unconstitutional, that would be a question properly

arising between the State for the benefit of the common school fund, and such prosecuting attorney.

It is here further urged that the act infringes that provision of the federal constitution which reserves to Congress the power to regulate interstate commerce. This question was, in our opinion, fully and correctly settled against the appellant's position in the cases of *State* v. *Indiana, etc., R. R. Co., supra,* and *State* v. *Pennsylvania Co., supra.*

It is insisted that the act violates the second subdivision of section 22, Art. 4, of the State constitution, which forbids the enactment of local or special laws ''For the punishment of crimes and misdemeanors.'' The argument of counsel proceeds upon such a broad construction of the word "misdemeanors" as would include all violations of duty for which penalties may be provided, though such penalties may be recoverable in civil actions, and as not limited to offenses punishable by criminal procedure and whose penalties are imposed as fines or by imprisonment in the county jail. While there may be instances in which this word should be given the meaning here insisted upon we doubt that such was the meaning in which it was employed in the constitution. However this may be, the question yet remains to be determined, is the act local or special? Counsel claim that it is special in ''Regulating the practice in courts of justice,'' as forbidden by subdivision 3, section 22, Art. 4, of the constitution.

They say: ''Considered as affecting the form and substance of the judgment, the act is special: (1) Because it provides for special judgments in favor of particular persons and against particular persons. (2) Because it provides a special statutory action and authorizes a particular judgment in favor of a particular officer against particular persons. (3) Because it gives a particular

officer a part of a penalty and thereby requires a judgment in favor of such officer." These propositions grow out of a strained construction of the act, and, in our opinion, cannot be maintained.

The act does not require a special form of judgment. There is nothing in the act, directing or suggesting that the form of judgment shall be other than that governed by the general practice act. The proceeding and judgment are, so far as the provisions of the act are concerned, subject to the direction of the code. It is true that the action is by, and in the name of, the State. This provision cannot be condemned as special; indeed, we do not understand counsel to so claim. Nor, can it be true that the judgment is required to be entered in favor of the State of Indiana and of the prosecuting attorney, jointly or in severalty. The provision that one-half of the recovery shall go to the prosecuting attorney, was intended as a method of compensating that officer, and to encourage the active enforcement of the law against its violators, and was not intended to require the prosecutor to become a party litigant, either as affecting the pleadings or the judgment. That the prosecutor is given a share in the results of the litigation, no more requires that the judgment shall be entered in his favor, than that an attorney's privilege to maintain a lien for his services, requires that the judgment in his client's favor shall be so entered as to include his claim for fees.

The constitutional validity of the act is further questioned as not being in compliance with the fourteenth subdivision of section 22, Art. 4, of the State constitution, which, together with the context, provides that the General Assembly shall not pass local or special laws "In relation to fees or salaries, except that the laws may be so made as to grade the compensation of officers

in proportion to the population and the necessary services required." As may be observed, this proposition involves the theory that the prosecuting attorney participates in the recovery, and that the appellant, aside from its interest in common with that of the people of the State, has an interest in the distribution of the fund recovered as penalties for violations of the act.

This theory, as we have already shown, is not tenable, so far as this case is concerned, and can have place only in a case involving the right of the prosecuting attorney to enforce his claim to one-half of the judgment. It is suggested by counsel that the act violates section 23, Art. 1, of the constitution, which forbids the granting "to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." This suggestion has its force in the idea that persons, traveling from railway stations at which there are no telegraph offices, are entitled to the same information as to the arrival of trains, as those traveling from stations having telegraphic facilities. So manifestly does the act in question permit all classes to avail themselves of the benefits intended by it, that we can hardly believe this suggestion to have been seriously made. Within the borders of the State there is no citizen, or class of citizens, given a privilege or immunity, by this act, which, "upon the same terms, shall not equally belong to all citizens." This provision of the constitution, if applied as appellant suggests, would forbid the enactment of a law, permitting the construction of a railway, passing through cities and avoiding towns, or passing through some cities and avoiding others. This law does not grant a privilege, nor extend immunity. It simply requires that railway management shall observe a given rule, intended for the benefit of every one who may avail himself of it.

What we have said of this suggestion applies with like force to the appellant's further suggestion that, under section 1, Art. 14, of the Federal constitution, no State shall "deny to any person within its jurisdiction the equal protection of the laws."

The only remaining question presented by counsel is that this act is local and special, and therefore lacks uniformity of operation, as forbidden by sections 22, 23, Art. 4, of the State constitution.

This question proceeds upon the two propositions that there is a railway, operated within this State, which has no station telegraphic facilities but which employs, instead, a system of telephones, and that the act does not purport to apply to all common carriers, but omits the company referred to and omits all carriers by water. It is said that this question was not passed upon in the cases of *State* v. *Indiana, etc., R. R. Co., supra,* and *State* v. *Pennsylvania Co., supra,* but, in this, we think counsel are in error as will be seen from pp. 77, 78, 133 Ind. It is urged, however, that if there decided, it was not correctly decided, and we are again asked to consider the question.

Section 22, *supra,* enumerates particular instances in which local or special laws shall not be enacted, and we have seen that the present law does not fall within any of those particular inhibitions. Section 23, *supra,* provides that "in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State." Under this provision it was the duty of the General Assembly to have enacted a law of "general and uniform operation throughout the State," if a general law could be made applicable. Whether a general law could be made applicable, in any instance not so specially enumerated, is not a judicial question, but has many times been held

to be a legislative question. *Young* v. *Board, etc.,* 137 Ind. 323; *Bell* v. *Maish,* 137 Ind. 226; *State, ex rel.,* v. *Kolsem,* 130 Ind. 434 (14 L. R. A. 566); *Wiley* v. *Corp. of Bluffton,* 111 Ind. 152; *Gentile* v. *State,* 29 Ind. 409. If, in our opinion, there were strong reasons for pronouncing this act special or local in its application to the classes of railways, it will be seen that, under the rule of the cases cited, we could not pass upon the question. It is our opinion that the law in question operates in all parts of the State in a similar manner where the same circumstances and conditions exist. This, it has frequently been held, answers the requirement that laws shall be of uniform operation. *Young* v. *Board, etc., supra; Consumers' Gas, etc., Co.* v. *Harless,* 131 Ind. 446 (15 L. R. A. 505); *Groesch* v. *State,* 42 Ind. 547; *State* v. *Indiana, etc., R. R. Co., supra; State* v. *Pennsylvania Co., supra.*

We conclude, therefore, that the record presents no available error and the judgment of the circuit court is affirmed.

Filed November 1, 1895.