Price, J.
The decision of the present controversy depends upon a proper understanding of Section 4091, Revised Statutes, which provides: “All teachers of the public schools within any *147 county in which a county institute is held may dismiss their schools for one week for the purpose of attending such institute, and when such institute is held while the schools are in session the boards of education of all school districts are required to pay the teachers of their respective districts their regular salary for the week they attend the institute upon the teachers presenting a certificate of full regular daily attendance at said institute signed by the president and secretary thereof; the same to be paid as an addition to the first month’s salary after said institute by the board of education by which said teacher is then employed, or in case he is unemployed at the time of the institute, then by the board next employing said teacher, provided the term of said employment begins within three months after said institute closes.”
This section is a part of our school laws, and should be construed with reference to the part it is to perform in the common school system of the state. At first the provision was not so broad, for we find that in Section 117 of the act entitled, VAn act for the reorganization and maintenance of common schools,” passed May 1, 1873, the General Assembly said that: “Any teacher in any public school is hereby authorized to dismiss the school under his or her charge for the week in which is held the county teachers’ institute, for the purpose of attending the same, and such, teacher shall not forfeit his or her pay for such week; provided, such teacher shall deposit with the clerk of the board a certificate from the secretary of the institute that he or she has been present at such institute for not less than four days; * * * *148 See 70 O. L., p. 227. With some changes in phraseology pertaining to school districts like the one here, this section was carried into the revision of our statutes in 1880 as Section 4091.
It is not important to search out what if any changes were made on this subject after the revision and prior to the present school code enacted April 25, 1904. The section under consideration is part of that code, and it is sufficient to say that it was clearly the purpose of the present provision to enlarge the former and extend its benefits to other classes of teachers, who are not in charge of schools when the institute is being held. As to such teachers who dismiss schools that are in session, they not only do not forfeit their pay for such week, as provided in the former law, but in such cases the boards are required to pay them their regular salary for the week they attend the institute.
But the present law goes further and attempts, at least, to provide for certain other teachers who are not in charge of schools while the institute is being held, and this requires a consideration of the latter part of the section which reads: “The same to be paid as an addition to the first month’s salary after said institute by the board of education by which said teacher is then employed, or in case he is unemployed at the time of the institute, then by the board next employing said teacher, provided the term of said employment begins within three months after said institute closes.”
In the case at bar, the teachers of the Bowling Green school district had been employed for the ensuing school year, prior to the meeting of the *149 institute, which was held from the 20th to the 25th of August. But the schools were not then in session, and their terms did not begin until the first Monday in September thereafter. Therefore, their case is governed, if at all, by that part of the section last quoted.
It is urged,for plaintiff in error that its language is vague and uncertain, and so much so, that it is not susceptible of reasonable interpretation, and therefore furnishes no authority to the board of education to make the allowance to the teachers complained of in the petition. That is the equivalent of asserting that that part of the section is void for uncertainty.
This view does not meet with our approval. It is true that the provision is imperfectly, and even bunglingly drawn, ■ and exhibits negligence and perhaps ignorance in its phraseology, but these marks should not defeat the operation of the statute, if we can, by the fair use of its language, arrive at the true legislative purpose. There are no contradictory or conflicting terms used, and the omission of clearer words, even relating to substantial matters, will not render the provision void or invalid. It is the duty of the court when called upon to deal with the legislation of a coordinate department of our government, to so construe a statute, if possible, as to give it a sensible effect and make it of binding force. A statute can not be held void for uncertainty, if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning, or the fact that it is susceptible of different interpretations, will not render it nugatory. Doubts as to its proper construction will not *150 justify us in disregarding it. It is the bounden duty of courts to endeavor by every rule of construction to ascertain the meaning of, and give full force and effect to, every enactment of the General Assembly not obnoxious to constitutional prohibition. This proposition is advanced and upheld in The Pennsylvania Co. v. State, 142 Ind., 428-434; St. Louis Dalles Improvement Co. v. Nelson Lumber Co., 43 Minn., 130-132; Lewis’ Sutherland Statutory Construction, Volume I, Section 86, “But if, after exhausting every rule of construction, no sensible meaning can be given to the statute, or, if it is so incomplete that it can not be carried into effect, it must be pronounced inoperative.”
This court has often applied similar rules. See Lessee of Cochran’s Heirs v. Loring, 17 Ohio 409; State, ex rel., v. Commissioners, 35 Ohio St., 458, where it is held that an act will not be declared void for uncertainty, if by resort to the recognized aids in the construction of statutes, it is possible to ascertain its meaning. And in Gordon v. State, 46 Ohio St., 607-27, it is said that uncertainty will not render a statute void if possible of execution.
Guided by these rules, we must determine, if possible, what the provision contained in the latter part of Section 4091 means. We think the task is not difficult of performance. In the first part, where the teachers dismiss their schools for one week for the purpose of attending an institute, and they' do attend such institute during that week, the boards of education are required to pay the teachers their regular salary for the week upon presentation of the proper certificate of their *151 attendance at the institute. In other words, the salaries continue during that week. Then it is said: “The same to be paid as an addition to the first month’s salary after said institute by the board of education by which said teacher is then employed, or, in case he is unemployed at the time of the institute, then by the board next employing said teacher, provided the term of said employment begins within three months after said institute closes.” “The same to be paid” — that is, salary at the same rate, is to be paid for the institute week to the teachers who then are under employment for the ensuing school year, that they will receive after service under such employment begins, and this rate of salary is to be paid as an addition to the first month’s salary after the institute closes. Or, to put it in other words, the teacher shall be paid for the week spent at the institute on the basis of the salary agreed upon for teaching in the schools thereafter, and this shall be paid as an addition to the first month’s salary earned after said institute.
There can be no difficulty in ascertaining the amount to be paid in the present case, because the teachers, prior to the holding of the institute, had been employed for the ensuing school year, and, of course, the terms of compensation had been agreed upon. This being the evident purpose of the Legislature attempted to be expressed in the language quoted, there can be no difficulty in its enforcement. The same observation applies to the payment of the teachers for the institute week of 1904. The facts for that year are the same that pertain to 1905,- for that was the first time the law became applicable in that district after its passage.
*152 The same construction of language will control cases where a teacher is not under employment at the time the institute is held. In his case, he is to be paid by the board next employing him after such institute, provided the term of said employment begins within three months after such institute closes. When he so becomes employed, his rate of compensation is fixed, and on presentation of the proper certificate, showing that he had attended the preceding institute for a week, his compensation for. that week is ascertainable and his right to receive it complete, if his term of employment begins within three months after said institute closes.
It seems the board of education, defendant in error, readily and easily comprehended this statute and was proceeding to comply with it, when a doubting Thomas appealed to the court to prevent it. We have nothing to do with the expediency of the law, but it is our duty to enforce it if it is susceptible of enforcement, and it certainly is. The motive and intent of the Legislature is discernible in the language employed when the whole section is read and considered together, and it was to promote the thoroughness and efficiency of the teachers in our schools, and through them the successful- advancement of the schools themselves.
The case was properly decided by the circuit court and its judgment is affirmed.

Judgment affirmed.

Shauck, C. J., Crew, Summers, Spear and Davis, JJ., concur.