JOHN F. GUNN, Appellant, v. MAHASKA COUNTY.

**Fines:** COMPENSATION FOR COLLECTING. Under the constitution fines for breach of the penal laws are to go into the school fund, and no part of the amount recovered, except that allowed the informer, can be deducted therefrom as compensation to the person collecting the fine, even though by agreement with the board of supervisors.

**Same:** DISPOSITION OF PROCEEDS. The constitutional provision with reference to the disposition of fines recovered for breach of the penal laws has no application to a fine imposed for the violation of an injunction; as such fine is not imposed for the breach of a penal law.

**Same:** COMPENSATION FOR COLLECTING FINES: POWER OF SUPERVISORS.
3 A board of supervisors has no control over a fine imposed for the violation of an injunction until it has been paid into the county treasury, and it has no power to authorize a person collecting such fine to retain a portion of the same for his services.

**Same.** ·Where the duty of enforcing fines is specifically conferred
4 on certain persons, the supervisors have no power to delegate that authority to another, or to increase the compensation allowed by statute therefor.

**Estoppel:** RATIFICATION. Where both parties to a contract are aware.
5 of its invalidity, the acceptance of benefits thereunder will not estop such party· from asserting its invalidity: Nor will acceptance of that to which he is entitled operate as a ratification of the void contract under which it was received.

**Counties:** EXECUTION OF CONTRACTS. A contract executed by the in-
6 dividual members of a board of supervisors will not bind the county, where there was nothing in the proceedings of the board authorizing the same, or indicating that the board as a body acted thereon.

*Appeal from Mahaska District Court.*—HON. K. E. WIL-COXSON, Judge.

'FRIDAY, JUNE 7, 1912.

ACTION to recover stipulated percentage of fines collected resulted in the dismissal of the petition. The plaintiff appeals.—*Affirmed.*

*H. H. Sheriff* and *D. C. Waggoner* for appellant.

*J. G. Patterson* for appellee.

LADD, J.—The plaintiff addressed the following proposition to the board of supervisors of Mahaska county: "I agree to collect the fines and costs due the county in the justice and mayor's courts and the district courts in and for Mahaska county, and agree to accept in full compensation 33 1-3 percent of the amount paid in to the

county treasurer of said fines and costs.   This agreement to be in full force and effect for the period of two years from its acceptance." Acceptance was indorsed thereon, each member signing same, in February, 1910, and it was filed with the county auditor together with a bond duly approved conditoned for the accounting of any moneys collected.   The plaintiff, not being an attorney, engaged counsel to assist him as occasion might require, and shortly thereafter ascertained that one Josephine Wilson against whom fines for contempt of court had been denounced in 1902 and 1903 amounting to $1,500 had since then through inheritance from her mother and a quitclaim deed from another heir become owner of certain real estate on which these fines had become liens.   Sections 2422, 5531, Code. After some parley, executions were issued and levied thereon when the several fines, with interest, were paid to the sheriff, and returned by him to the clerk of court, who, in due time, turned the same into the county treasury.   Recovery of 33 1-3 percentum thereof was demanded by plaintiff and denied by the district court.

Counsel for defendant contends that no part of fines so collected may be thus diverted from the school fund by the board of supervisors, and rely on section 4 of part 2 of article 9 of the Constitution, which declares that "the clear proceeds of all fines collected in the several counties for any breach of the penal laws shall be exclusively applied in the several counties in which such . . . fine is . . . collected among the several school districts of said counties, in proportion to the number of youths subject to enumeration in such districts, to the support of the common schools, or the establishment of libraries, as the board of education shall from time to time provide."   Precisely what is meant by "the clear proceeds of all fines collected" has not been the subject of judicial construction in this state.   In *Woodward v. Gregg*, 3 G. Greene, 287, the prosecuting attorney

1. FINES: compensation for collecting.

withheld from a fine collected by him the fee allowed by
law for prosecuting the person fined, and this was held to
be contrary to this provision of the Constitution.   A like
conclusion was reached in *State v. Miles,* 52 Wis. 488
(9 N. W. 403), where a county treasurer withheld the
costs of prosecution from the fine collected which the law
of that state under similar constitutional provisions required
to be reported to the State Treasurer, the court saying:

The legal fees which the county treasurer may retain
out of such money is 2 percent thereof.   Section 719.   No
deduction for the benefit of the county can lawfully be made
by the county treasurer from the fines paid to him, unless
the same is authorized by law.   It is for the Legislature
to determine what deductions are to be made, and not the
county treasurer, or the country board of supervisors.   Even
the power of the Legislature in this respect is limited, as
appears from the cases of *Lynch v. The Steamer Economy,*
27 Wis. 69, and *Dutton v. Fowler,* 27 Wis. 427.   To
permit each board of supervisors to determine for itself, or
each county treasurer for himself, what expense shall be
deducted from fines collected, would be to introduce inex-
tricable confusion.   Under such a system there would be
no fixed, certain rule by which the 'clear proceeds' of fines
could be determined; or, what is very probable, there would
be no such 'clear proceeds' left for the school fund.   The
system would be unjust and intolerable, and its practical
effect would be doubtless to dry up one of the sources
which the Constitution has ordained to replenish and in-
crease the school fund of the state.   The Legislature has
provided for no deduction from such fines except 2 percent
thereof, which the treasurer may retain.   Hence, under
existing laws, the clear proceeds of fines received by the
county treasurer is ninety-eight percent thereof, which must
be paid into the state treasury for the benefit of the school
fund.

In *People v. Treasurer of Wayne County,* 8 Mich.
392, the court held that deductions of expenses for collect-
ing the fines and prosecuting the offender might not be
made therefrom, but the Constitution there provided that

"all fines" be exclusively applied to the support of libraries. In *Lynch v. The Steamer Economy*, 27 Wis. 69, an act diverting one-half the penalty imposed (the other half being given to the informer) to the use of the county was held inimical to a constitutional provision like that of this state, and in *Dutton v. Fowler*, 27 Wis. 427, a statute allowing the informer the entire penalty was held obnoxious to the constitutional provision, but in *Katzenstein v. Railway*, 84 N. C. 688, a distinction was drawn "between those penalties that accrue to the state and those that are given to the person aggrieved, or such as may sue for the same," and it was held that the former only are contemplated in a like provision of the Constitution of that state, though the force of this conclusion is somewhat weakened by the references thereto in the several opinons of members of the same court in *State v. Railway*, 108 N. C. 24 (12 S. E. 1041). In *State v. De Lano*, 80 Wis. 259 (49 N. W. 809), a statute giving half of the fine to the informer was upheld; the court saying:

Really the question simply is, What is the meaning of the words 'clear proceeds,' as used in the Constitution? That it does not mean 'entire' proceeds is we think too clear for argument. 'Clear' implies that something is to be or may be deducted, so that the balance is 'clear' from all charges or demands. It seems to us that the word 'clear' is here used in the sense that it is frequently used colloquially when we speak of the 'clear profit' in a business transaction, meaning the 'net profit' after all expenses or losses are deducted. Obviously, if this is the meaning of the word in this connection, it was contemplated that there would be power resting somewhere to provide for and define what deductions from the gross fine could properly be made. If that power exists (and we hold that it does), it must rest in the Legislature, as said by Mr. Justice Lyon in *State v. Miles, supra*. This view of the intent of the framers of the Constitution in using the words 'clear proceeds is strengthened when we consider that the system of paying a moiety of fines in many penal actions

to informers was in frequent use in England from very early times, and has been quite generally adopted in this country. Bac. Abr. Tit. 'Actions *Qui Tam*,' 3 Bl. Comm. 160. It is not unreasonable to suppose that the words 'clear proceeds' were intended to provide for just this contingency, so that the Legislature might authorize a part to be paid to the informer for the purpose of securing a better enforcement of the law. It is quite evident that, if it is not made an object for some one to prosecute, many salutory laws would never be enforced, because no one would be interested in seeing them enforced.

See *State v. Ry.*, 133 Ind. 69 (32 N. E. 817, 18 L. R. A. 502); *Southern Express Co. v. Commonwealth*, 92 Va. 59 (22 S. E. 809, 41 L. R. A. 436). As to fines under municipal ordinances, see *Village of Platteville v. Bell*, 43 Wis. 488. As to who may question validity of statute, see *Pennsylvania Co. v. State*, 142 Ind. 428 (41 N. E. 937); *Ex parte McMahon*, 26 Nev. 243 (66 Pac. 294).

Without saying that deductions from fines and forfeitures must in all circumstances be limited to those allowed the informer, we are of the opinion that these are never permissible, unless authorized by statute in procuring the assessment of fines, and the Legislature has always proceeded on this theory. Section 4338 of the Code declares that "fines and forfeitures, not otherwise disposed of, go to the treasury of the county where the same are collected, for the benefit of the school fund," and, save when a part is given the informer or for prosecuting, no portion thereof, when assessed for any breach of the penal laws, is undertaken to be diverted from the school fund by any statute of the state. Thus, in addition to his regular salary, the county attorney receives "the fees as now allowed to attorneys for suits upon written instruments where judgment is obtained for all fines collected where he appears for the state but not otherwise." Section 308, Code Supp. 1907. Such fees are "on the first two hundred dollars, or

fraction thereof recovered, ten percent; on the excess of two hundred dollars, to five hundred dollars, five percent; on the excess of five hundred dollars to one thousand dollars, three percent; and on all sums, in excess of one thousand dollars, one percent." Section 3869, Code. But these fees are not to be deducted from the fines, and no provision can be found in the Code authorizing any officer or board to deduct or allow another to deduct anything therefrom for services in collecting a fine imposed for a breach of the penal laws after the same has been assessed.

Were the fines involved such as contemplated by the provision of the Constitution quoted, then certainly deductions therefrom for collecting merely might not be made.

2. SAME: disposition of proceeds.

But the fines against Josephine Wilson are not of the class mentioned in that instrument. These were imposed owing to her dereliction in disobeying a decree of court enjoining her from keeping a place with intent therein to sell or keep for sale intoxicating liquors. The conviction for contempt was not of a penal offense, and therefore not imposed "for any breach of the penal laws." *Judge & Bunting v. Powers,* 136 N. W. (Iowa) 315, decided at the last session.

But under section 4338 of the Code such fines when "not otherwise disposed of go into the treasury of the county . . . for the benefit of the school fund."

3. SAME: compensation for collecting fines: power of supervisors.

After they reach such treasury, they may be under the direction of the board of supervisors for distribution. See section 2839 Code, but until then, the board of supervisors have no control over the same. It may not remit any portion of a fine (*McKay v. Woodruff,* 77 Iowa, 413), and in an action on a forfeited recognizance the county is not the real party in interest (*State v. Stewart,* 74 Iowa, 336). Until fines are paid, the matter of their collection is under the control of those upon whom rests the responsibility for the enforcement of the laws of the state. Thus the

Governor only may remit fines and forfeitures. Section 16, article 4, of Constitution. The county attorney is required "to enforce all forfeited bonds and recognizances, and to prosecute all proceedings necessary for the recovery of debts, revenues, moneys, fines, penalties and forfeitures accruing to the state or his county, or to any school district or road district in his county," (Laws 1909, chapter 17, and, as seen, is paid a percentage of the amount collected. Section 4339 authorizes actions for the recovery of fines to be prosecuted by the officers or persons to whom they by law belong in whole or in part or by the public officer into whose hands they are to be paid when collected. And in section 2429 of the Code the attorney prosecuting for a contempt is entitled to ten percentum of the fine paid for collecting the same. *Brennan v. Roberts*, 125 Iowa, 615. These provisions seem to cover the entire subject, and leave no room for interference by the board of supervisors. True, section 1302 of the Code exacts a full and explicit report to the board of supervisors annually of all fines, penalties, and forfeitures imposed by officers whose duty it is to receive the same, but this is in aid of a proper accounting by the several officers, and does not purport to confer any authority on the board with reference to such fines, penalties, and forfeitures before paid. Nor is such authority conferred by paragraphs 11 and 12 of section 422 of the Code, reading: "The board of supervisors shall have power to manage and control the school fund of the respective counties as shall be provided by law, to represent the respective counties, and to have the care and management of the property and business thereof, in all cases where no other provision shall be made to manage and control the school fund of the respective counties as shall be provided by law."

Other provisions to which attention has been directed are made for the enforcement of fines, and these do not became a part of the school fund until paid. When certain

duties have been specifically conferred on an officer,
whether public or of the court, the board of
4. SAME.    supervisors may not, unless so authorized by
statute, delegate such duties to another, nor increase the
compensation fixed by statute for the discharge of such
duties. *Massie v. Harrison Co.*, 129 Iowa, 277; *Adams
County v. Hunter*, 78 Iowa, 328; *Ryce v. City of Osage*,
88 Iowa, 558; *Heath v. Albrook*, 123 Iowa, 559; *Platte v.
Gerrard*, 12 Neb. 244 (11 N. W. 298); *Stringer v. Frank-
lin County* (Tex.) 123 S. W. 1168. See, also, *Brome v.
Cuming County*, 31 Neb. 362 (47 N. W. 1050), and
*Frederick v. Douglas County*, 96 Wis. 411 (71 N. W. 798).
Most of the decisions relied upon by appellant are dis-
posed of by saying that the services contracted for by the
county had not been exacted by statute from any other
officer. See *Call v. Hamilton County*, 62 Iowa, 448;
*Shinn v. Cunningham*, 120 Iowa, 383; *Galusha v. Wendt*,
114 Iowa, 597; *Denison v. Crawford County*, 48 Iowa,
211; *Disbrow v. Board of Supervisors*, 119 Iowa, 538.
*Taylor County v. Standley*, 79 Iowa, 666, is to be approved
on the ground that the statute quoted therein impliedly
authorized the board of supervisors to employ counsel to
assist the county attorney in an action in which the state
or county is interested, and that such assistance may be
in separately prosecuting the same. See *Bevington v.
Woodbury County*, 107 Iowa, 424. But in any event
plaintiff was not an attorney and the board of supervisors
in meddling with the enforcement of judgments imposing
fines was acting outside of its authority.

Appellant argues that the county may not set up the
invalidity of the contract for that it has accepted the bene-
fits thereof. Both parties are to be assumed to have been
5. ESTOPPEL:    aware of its invalidity, and therefore neither
ratification.    can be held to have been misled. No more
was paid to the county than it was entitled to had there
been no agreement and therefore receiving the fines can

not be construed as a ratification, even if a void agreement by public officers may be the subject of ratification.

There is another ground for denying liability. The acceptance of plaintiff's proposition was signed by the members of the board of supervisors individually, and,

**6. Counties:** execution of contracts.

though they may have been in session at about that time, nothing relating thereto appears in the proceedings of the board, and no extrinsic evidence as to its action was adduced. In these circumstances it was not to be inferred that the acceptance was by the members acting as a body in session as a board of supervisors rather than individually, and for this reason also the acceptance was not binding on the county. *Modern Steel Structural Co. v. Van Buren County et al.,* 126 Iowa, 606.

The judgment dismissing the petition is *affirmed.*