IN THE MATTER OF THE COMPLAINT AGAINST W. F. CONDON.

**Attorneys:** DISBARMENT: EVIDENCE. Where an attorney, after his disbarment and subsequent re-instatement, actuated by a desire for revenge and not to remedy any wrong or to protect society, counseled, encouraged and instigated unjust proceedings against members of the bar appointed by the court to formulate the complaint against him for disbarment, his license to practice was subject to revocation for unbecoming conduct. Evidence held to sustain a suspension of the license of accused.

**Same:** DISBARMENT: GROUNDS. Neither failure of an attorney to pay over money belonging to his client prior to an order of court and demand; nor the payment to a county attorney of commissions from fines collected, where such had been the practice for a long series of years; nor failure of a justice of the peace to spread upon his record a judgment of fine and to itemize thereon the costs, where the same were properly accounted for, are ground for disbarment.

**Same:** CONTINUANCE OF CAUSE: PREJUDICE. Refusal to continue a disbarment proceeding because of insufficient time for preparation for trial was not prejudicial, where it appeared that accused was familiar with all the facts, and it was not shown that he would be deprived of material evidence if the trial was not postponed.

*Appeal from Webster District Court.*—HON. CLARENCE NICHOLS, Judge.

FRIDAY, JUNE 19, 1914.

ON complaint duly filed by order of his honor, C. G. Lee, presiding over the district court in and for Webster county,

D. M. Kelleher, Esq., filed a complaint against W. F. Condon, accusing him of conduct unbecoming an attorney and counselor at law, and upon hearing, the Hon. Clarence Nichols presiding, the license of said Condon as attorney and counselor at law was suspended until further order of the court in the premises. He appeals.—*Affirmed.*

*Helsell & Helsell,* for appellant.

*D. M. Kelleher* and *A. N. Botsford,* for appellee.

LADD, C. J.—The district court of Webster county directed complaint against W. F. Condon, an attorney practicing at the bar of that court, to be prepared and filed, and this was done and a copy thereof served on Condon September 12, 1913. Therein, it was alleged that on or about August 29, 1913, said Condon caused to be filed in the office of the clerk of the district court of said county six separate complaints against the members of the bar of said court, as follows: (1) "In the matter of a complaint against B. J. Price, M. M. Joyce, S. N. Magowan, and B. B. Burnquist," verified by Wayne and Cynthia Porter before the accused as notary public; (2) "In the matter of a complaint against B. J. Price and S. N. Magowan," verified by C. W. Pratt; (3) "In the matter of a complaint against B. B. Burnquist and S. N. Magowan," verified by John Connors and others; (4) "In the matter of a complaint against M. F. Healy, Robert Healy, B. B. Burnquist, and Seth Thomas," verified by John A. Rail; (5) "In the matter of a complaint by A. T. Hill against the above-named persons," verified by said Hill; and (6) "In the matter of a complaint against M. F. Healy," verified by C. W. Pratt. The first three of these complaints had been heard by the court and dismissed, and the last three dismissed at the instance of the complainants without hearing. The charge against Condon is that he counseled, commenced, instigated, and encouraged these proceedings in violation of his duty as

an attorney and counselor at law without sufficient grounds therefor; and (2) for the purpose of injuring the parties accused in their reputation, professional standing, and good name, he counseled, encouraged, and solicited the commencement and maintenance of proceedings which were improper and unjust, without foundation in fact, and thereby advanced causes and asserted facts deemed by him to be prejudicial to the honor and reputation of the parties accused, contrary to his duties as an attorney and counselor at law and his obligations as an officer of the court; and (3) that he violated section 4903 of the Code of Iowa in that thereby he did encourage, excite and stir up actions and controversies between the complainants in said complaints and the attorneys against whom they were filed, with the intention to injure said attorneys in their professional and personal repute.

I. It appears that Condon began the practice of law at Ft. Dodge in December, 1907, and at the November term, 1911, his license to practice was suspended indefinitely. In March, 1913, on petition of every member of the local bar, except one who was absent, he was reinstated. Shortly thereafter, he began making inquiries concerning the members of the committee who had prosecuted him in that action, with the result that these complaints were filed against them and Magowan, who was a witness against him, on August 29th of the same year. No evidence bearing on the second, fourth, and sixth complaints filed was adduced, and about all that need be said concerning them is that the charge in the last was scandalous, in no wise affecting professional integrity, and the others likely without foundation else Condon would have undertaken to prove them. They tend strongly to corroborate the inference to be drawn from the evidence, bearing on the other charges, that his entire course in filing the six complaints was actuated by the evil motives of malice and revenge. It appears that in February, 1912, Wayne Porter was charged with a serious offense, but on hearing, the justice of the peace, S. N. Magowan, held the

1. Attorneys: disbarment: evidence.

evidence insufficient to warrant holding him to the grand jury though ample to convict for assault and battery. Thereupon he pleaded guilty to that charge, and was fined $100 and the costs taxed against him. His mother, Cynthia Porter, had employed Price and Joyce to defend and their fee was $100. She paid the fine, fee, and costs, in the sum of $225.75. In the complaint first mentioned, these costs are alleged to have been extortionate and not legally taxable, the fine excessive, and the attorney's fees excessive and unjust, and it was further charged that though the justice's report showed the costs and fine paid, said costs were not itemized, and the treasurer's books did not show that the fine had been paid. The appointment of a committee was demanded to deal with the justice of the peace, who was an attorney, and the attorneys receiving the fee from Mrs. Porter. The evidence that the costs were correctly taxed is undisputed, though they were not itemized on the justice's docket, being merely marked paid, and that the fine was paid by the justice giving a check on a bank for $100 to the county attorney, and the check indorsed by the latter to the county treasurer in duplicate for $90, the county treasurer paying the attorney 10 per cent. of the fine as his commission, according to the custom in that county. The treasurer's stub receipt book showed the issuance of this receipt and his ledger that the money had been received. The method of keeping account of fines paid into the treasurer's office is not prescribed by statute, and no inquiry whatever was made by Condon of the treasurer or of the justice. The evidence also discloses that both members of the firm of Price and Joyce were engaged in the actual trial of the case nearly two days and had given much time to looking up evidence. The reasonableness of the charge for their services is not drawn in doubt, and the Porters testified that they had been entirely satisfied therewith before and since. It further appears that Condon in looking into another matter noticed that the costs were not itemized in the justice's report, and that he immediately sought Wayne Porter and also his mother,

and according to their story told him he had been appointed by the court to look the matter up, that the fine had not been turned over to the proper officers, and that the fee of Price and Joyce was excessive, and that he could get a part of the money back for them. After being interviewed two or three times by him they went to his office, and on the strength of his representations, signed and verified the complaint mentioned, though without understanding its design save to procure back part of what they had paid. Further than this, there was no employment of him. From this recital, it plainly appears that the facts within Condon's knowledge did not justify the institution of disbarment proceedings. Surely the mere irregularity in omitting to itemize the costs in the justice's entry and in the manner of settling the county attorney's commission did not justify any such course. The charge against Price and Joyce was frivolous. In view of the participation of the parties against whom complaint was made at the hearing resulting in his former disbarment, his course in this matter cannot well be attributed to any other motive than that of malice and revenge.

The third complaint against Burnquist and Magowan was verified by John Connors and others, April 12, 1913. Among other things, Burnquist is charged with not legally accounting for money coming into his hands as county attorney, also that he refused to bring an action to remove the mayor of Barnum, and also that after the grand jury had begun an investigation against one Morrison, he filed an information and caused Morrison to be brought into the district court and fined and it is said in the complaint that Magowan failed to account for fines of $15 each assessed against Connors and nine others residing in the vicinity of Barnum. Condon appears to have made a perfunctory investigation, and to have told Connors that the fines referred to had never reached the county treasurer's office, and, relying thereon, Connors and others signed and verified the complaint, believing that some of the money might be ordered paid back.

Thirteen persons had pleaded guilty, and only ten had paid the fines assessed and, according to the record, the judgment had not been written into the docket by Justice Magowan, owing to the request of the defendant's attorney and because of the suggestion of the county attorney that this be postponed. However, the justice had paid the .fines over to the county treasurer on the day these were received by a check, which had been honored. The stub of the receipt was in the county treasurer's office, and the amount appeared on his ledger. But a duplicate receipt had not been filed by the justice with the county auditor, though he had included this item in his quarterly report as justice to that officer without itemizing it. The county auditor adjusted his books by examining the treasurer's stub receipt book, upon finding that he had more money than his records indicated should be charged to the treasurer. Condon had noticed this item in Magowan's report in the auditor's office, but made no inquiry of the treasurer or Magowan or Burnquist concerning the same. This should have put him on inquiry, and reasonable diligence required that he follow up this information before making the serious accusation of misappropriating public moneys. The complaint against Burnquist on its face seems strained, and the facts recited susceptible to fair explanation.

The fifth complaint had even less foundation. The wife of one A. T. Hill had eloped with James Jacobs, and as the latter owned a couple of lots in Ft. Dodge, Hill employed the firm of Healy, Burnquist & Thomas to bring suit for damages and attach the lots. Burnquist of that firm so did, and upon a judgment in rem for $1,000 being rendered caused special execution to issue and the lots to be offered for sale. As there were no bidders, it was arranged that Wm. Healy should take title to the lots for the sum of $500, and that these should be disposed of through him and the proceeds divided, the firm receiving one-half the proceeds and Hill the other half, the action having been brought on a contingent fee. Burnquist bid in the lots

2. SAME: disbarment: grounds.

in the name of Healy, to whom a certificate of sale was issued. Thereafter one Taft was pressing Hill for the payment of a debt, and Hill having explained that he was expecting money from this source, Taft took him to Condon. Condon prepared a complaint setting out the foregoing facts, except that it had been arranged that the property should be bid in in the name of Wm. Healy which Hill had not told him, and also that Hill had frequently called on Burnquist to sell the lots and that the latter responded that he could not find purchasers and made other excuses; that Hill had paid several sums to defray expenses and had never received a receipt. There was no ground whatever for implicating Robert or M. F. Healy or Seth Thomas in these charges, and even if these were true, the facts alleged did not constitute grounds for disbarment proceedings. If the firm had received the money, a motion that they pay over the same would have been the proper remedy. Even then a demand should have been first made. The record indicates plainly that the accused has seized onto matters somewhat out of the usual course in order to get even with the attorneys who as a committee appointed by the court performed their duty in prosecuting the disbarment proceedings against him. Of course, Burnquist ought not to have allowed the treasurer to deduct commission on fines from the fines and pay this over to him. There is no warrant in the law for so doing. *Gunn v. Mahaska County*, 155 Iowa, 527. But acquiescing in this illegal custom, which seems to have prevailed in that county for years, in the absence of any refusal to account for the moneys retained, cannot be construed as adequate ground for demanding that the license to practice be withdrawn from the attorney. So, too, Magowan ought to have known that the costs should be itemized and entered on his docket in the Porter Case, and the judgment finding the ten men from Barnum also should have been spread upon the record, even though this might have proven disagreeable to them. But the record casts no imputation on his integrity or that of Burnquist, and so there

was no fact justifying the attempt to suspend their licenses as attorneys at law.

Were there but one of these proceedings commenced it might be attributed to ignorance of the law or to carelessness in the matter of investigation, but with six proceedings of the same kind begun on the same day, lodged against attorneys only who had participated in the action against him, containing allegations without support in fact and made without reasonable inquiry, the plea of ignorance and inattention does not explain nor exculpate the accused from the plain inference to be drawn therefrom; that in so doing (1) he was guilty of counseling and maintaining proceedings which appeared to him unjust, for that this was done in malice, and for the purpose of revenge, and not to remedy any wrong or to protect society, and in that (2) he did advance matters not exacted by the justice of the causes, prejudicial to the honor and reputation of all the parties falsely accused, and (3) did encourage the commencement of these proceedings from motives of passion and interest. This was in willful violation of his duties and obligations as an attorney and counselor at law, and is specified in paragraph 3 of section 324 of the Code as ground for revocation of his license to practice law in this state.

II. Complaint is made that adequate time for defense was not afforded the defendant. The charges were served on him September 12, 1913, and the hearing was had October 8th following. As the charges in the complaint related to the filing of the six complaints which were based on investigations he claimed to have been making since March previous, and a part of which he had recently presented to court, the facts must have been familiar to him, and he did not claim that he would be unable to produce such evidence as he wished in event the hearing was not postponed. When the application was filed does not appear, but the first affidavit of Condon was made on September 30th, and it recites that he had been unable to

3. SAME: continuance of cause: prejudice.

engage the services of a member of the local bar, or one else-where, though an interview had been arranged; that he had no means to pay the expenses of a trial then, but would have enough by the next term, and that to fairly prepare, he should have until the next term of court. Another affidavit by him, filed October 7th, disclosed that he had secured the services of J. M. Parsons, Esq., of Des Moines, on October 1st, con-ditionally, he first desiring to interview local attorneys, which he did three days later and undertook his defense, and, further, that the examination of seventeen witnesses and justices' dockets will be necessary. Parsons confirmed, by affidavit, these statements concerning his employment, and averred that were the accused forced to trial, then the latter would be unprepared, but could be ready in a short time. We should have been quite as well satisfied had more time been accorded the accused within which to prepare for his defense, but the record leaves no doubt as to the absence of any prejudice. The condition of the justice's docket in con-nection with the records in the offices of the county auditor and treasurer, together with the testimony of the parties having knowledge and of the accused, were all that might reasonably be expected to throw light on the transaction, and all this was before the court.

The ruling on the application for continuance was with-out prejudice. Though the charges must be specific, the decree is not required to include findings on particular issues. We are of opinion that the court did not err in suspending the license of the accused.—*Affirmed.*

EVANS, WEAVER, and PRESTON, JJ., concur.